**SIGNED THIS: May 09, 2008**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| THERESA LEE REYES, | ) | No. 07-80407 |
|                      Debtor. | ) | |
| | ) | |
| | ) | |
| DAVID LOPEZ REYES, | ) | |
|                      Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-8070 |
| | ) | |
| THERESA LEE REYES, | ) | |
|                    Defendant. | ) | |

### O P I N I O N

Before the Court is the amended motion for summary judgment filed by the Plaintiff, David Lopez Reyes (DAVID), on his complaint against the Defendant, Theresa Lee Reyes (THERESA), his former spouse, seeking a determination that a judgment entered against her in state court is nondischargeable under Section 523(a)(6) of the Bankruptcy Code, under the doctrine of collateral estoppel.

*BACKGROUND*

DAVID and THERESA were married to each other for five years. In May, 2004, after their divorce in August, 2002, DAVID brought an eight-count complaint against THERESA in state court, for conversion, alleging that during their marriage she had pawned his jewelry, cashed a money order belonging to him, withdrew over $16,000 from his bank accounts and used his credit cards, all without his knowledge or consent. Appearing *pro se,* THERESA answered the complaint.[1] With leave of the circuit court, DAVID filed an amended complaint adding a count seeking to collect on a promissory note for $5,000, which THERESA had signed on September 1, 2004.[2] DAVID then filed a motion for summary judgment, submitting his affidavit in support thereof and claiming that the amount owed by THERESA was $38,492.00. Although THERESA failed to file a response to the motion, she attended the hearing on the motion held on November 29, 2004. Based upon her failure "to plead," the court granted DAVID'S motion and entered a handwritten order granting judgment in DAVID'S favor and against THERESA, for "the willful and wanton unauthorized conversion" of DAVID'S property, in the amount of $38,492 plus costs. The state court docket reflects that THERESA was admonished that she had thirty days in which to seek that the judgment be set aside. DAVID instituted proceedings to collect the judgment and at a citation hearing, THERESA agreed to pay $250 per month beginning on April 30, 2005.

---

[1] Her handwritten response to the complaint asserted that all of the allegations raised had been settled in the divorce agreement, claiming that DAVID was continuing to harass her.

[2] The note provided for monthly payments of $1,000, beginning in September, 2004.

2

THERESA filed a Chapter 7 petition on February 28, 2007, scheduling DAVID'S judgment debt of $38,492 on Schedule F as an unsecured claim. DAVID filed an adversary proceeding, seeking a determination that the judgment debt is nondischargeable under Section 523(a)(6). THERESA, represented by her bankruptcy attorney, filed an answer to the complaint, denying the allegations of nondischargeability. DAVID filed a motion for summary judgment, based on the state court judgment and the theory of collateral estoppel. In support of his motion, DAVID submitted a copy of the state court docket and copies of the state court pleadings, including the complaint, answer, motion for summary judgment and supporting affidavit, and the order of the state court granting judgment in his favor. DAVID also submitted his affidavit and that of his attorney in the state court proceeding, attesting to THERESA'S participation in the state court action. THERESA did not respond to the motion.[3]

## ANALYSIS

### *Standard for Summary Judgment*

Summary judgment is appropriate whenever the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. In *In re Draiman*, 2006 WL 1876972 (Bankr.N.D.Ill. 2006), the court addressed the movant's burden when a motion for summary judgment is premised upon the doctrine of collateral estoppel:

> When a party seeks summary judgment based on the doctrine of collateral estoppel, the nonmoving party may not defeat the motion simply

---

[3] At a pretrial conference on December 11, 2007, the parties indicated that discovery was complete and that they intended to file motions for summary judgment. The parties were given thirty days to file cross motions for summary judgment, with dates set for responses and replies.

3

by establishing that it has evidence that conflicts with the factual conclusions of the trier of fact in the previous case. Even if the nonmoving party produces evidence that contradicts a prior judgment, collateral estoppel bars the party from relitigating facts decided in the previous case. *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir. 1992); *Boim v. Quranic Literary Inst.*, 340 F.Supp.2d 885, 900 (N.D.Ill. 2004). The moving party bears the burden to show that collateral estoppel applies in the first instance. The nonmoving party may oppose the motion by arguing that the moving party has not met all elements of collateral estoppel. But if collateral estoppel does apply, it forecloses litigation of issues that the prior court actually and necessarily decided. *Havoco v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307-08 (1995).

The doctrine of collateral estoppel applies in proceedings under Section 523(a) of the Bankruptcy Code and may be invoked to preclude relitigation of the elements necessary to meet an exception to discharge under that provision. *Grogan v. Garner*, 498 U.S. 279, 285 at n. 11, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991). The premise underlying the doctrine is that once an issue has been decided in a prior proceeding, no further fact-finding function remains to be performed. *In re Markowitz*, 190 F.3d 455 (6th Cir. 1999)(citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)). In determining whether the doctrine is applicable, the court looks to the preclusion law of the state from which the judgment was rendered. *In re Catt*, 368 F.3d 789 (7th Cir. 2004). Under Illinois law, collateral estoppel precludes the relitigation of factual issues when (1) the issue sought to be precluded is identical to the issue decided in the prior action; (2) the party against whom the estoppel is asserted must have been a party or in privity with a party to the prior adjudication; and (3) there must have been a final judgment on the merits in the prior action. *Brokaw v. Weaver*, 305 F.3d 660 (7th Cir. 2002); *DuPage Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill.2d 71, 744 N.E.2d 845 (2001). Application of the doctrine is limited to the factual or legal issues actually litigated and only where the

determination of those issues was essential to the final judgment. *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir. 1987); *In re Kelly*, 350 B.R. 778 (Bankr.N.D.Ill. 2006). The party asserting issue preclusion has the burden of establishing that the doctrine should be applied. *Los Amigos Supermarket, Inc. v. Metropolitan Bank and Trust Co.*, 306 Ill.App.3d 115, 713 N.E.2d 686 (Ill.App. 1 Dist. 1999).[4]

The situation most clearly contemplated by the "actually litigated" standard is the resolution of a claim after a trial. At the other extreme is a default judgment entered because a defendant fails to answer the complaint. Under Illinois law, a default judgment has no issue preclusive effect since the issues are not actually litigated. *S & S Automotive v. Checker Taxi Co.,* 166 Ill.App.3d 6, 520 N.E.2d 929 (Ill.App. 1 Dist. 1988); *In re Nikitas,* 326 B.R. 127 (Bankr.N.D.Ill. 2005).

Between the extremes, however, is a whole range of scenarios involving partial participation by a party. The collateral estoppel effect of a judgment that is entered after the defendant has appeared and participated to some extent must be analyzed on a case-by-case basis upon review of the full record of the prior proceeding. *In re Wright,* 187 B.R. 826 (Bankr.D.Conn. 1995). The focus is not on how well-supported or actively litigated the issues were by the plaintiff, since no matter how much one-sided litigation occurs, the fact remains it is still one-sided and lacks the "adversary dimension." *Catt,* 368 F.3d at 792. Even where the court determines specific damages based on verified pleadings and an evidentiary prove-up hearing, that does not remedy the lack of actual, contested litigation. *Id.* at 793.

---

[4] The doctrine of collateral estoppel is to be distinguished from the doctrine of *res judicata* or claim preclusion, which bars the relitigation of an entire cause of action. Since bankruptcy courts have exclusive jurisdiction to determine the dischargeability of a claim arising under Section 523(a)(6), the doctrine of *res judicata* can have no applicability here. *See River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290, 317, 703 N.E.2d 883, 896 (1998).

5

Instead, the focus must be on the nature and extent of what the defendant did to dispute the plaintiff's claims or evidence.  Ideally, collateral estoppel is accorded to a trial court's specific finding of fact made after weighing competing evidence, rather than merely accepting one side's uncontested version of events. *See, Bell v. Douglass,* 184 B.R. 301, 304-06 (N.D.Ill. 1995) (determining collateral estoppel not to apply where the trial court judgment depended upon an unanswered request to admit served on the defendant after his attorney withdrew).

Entry of judgment on a motion for summary judgment satisfies the "actually litigated" standard only if the party against whom judgment was entered had proper incentive to and did in fact fully contest the motion on the merits. *In re Dvorak,* 118 B.R. 619, 624 (Bankr.N.D.Ill. 1990).  When judgment is entered pursuant to an unopposed motion for summary judgment, as with most default judgments, the court has not heard evidence or contrary arguments. *Id.* at 626.  In that circumstance, the issues should not be considered to have been actually litigated even if the court required the plaintiff to go through a prove-up hearing, in the absence of some challenge to plaintiff's evidence. *Id.*

In the underlying case, DAVID filed an 8-count complaint against THERESA alleging various acts of "willful and deliberate" conversion of his personal property seeking compensatory and punitive damages. THERESA filed a response to the complaint which states, in full, as follows:

> In response to the complaint filed by David Reyes, all his allegations were addressed and settled in the divorce agreement.  I currently have a restraining order against him and he is harassing me in every way he can.

That was the only paper she filed in the case.

6

On September 24, 2004, DAVID filed an amended complaint adding Count IX alleging he loaned THERESA $5,000 just three weeks earlier, while in the midst of the lawsuit. The court gave THERESA until October 15, 2004 to answer the amended complaint. Before the answer period ran, on October 6, 2004, DAVID filed his motion for summary judgment and scheduled it for hearing on November 29, 2004. THERESA apparently showed up at the hearing but summary judgment was entered against her for her failure to plead. There is no indication in the state court record that the court heard any testimony or otherwise took evidence to support or contradict the motion. Neither is there any indication that the court considered the affirmative defense raised in THERESA'S response to the initial complaint that the claims against her were previously adjudicated, or settled and released, in the divorce case. Based on the language of the order, the judgment was granted simply because THERESA failed to file a pleading.

The state court docket sheet reflects no participation by THERESA other than two appearances in court and filing one pleading. There is no indication she participated in any discovery, either as a proponent or a respondent. And there is no indication that the court heard her testimony or that she presented evidence to the court in any manner. In this Court's view, the judgment entered against her is tantamount to a default judgment, for collateral estoppel purposes.[5]

DAVID contends that THERESA had a full and fair opportunity to defend the claims in state court. Every defendant who is properly served with process has an "opportunity" to present a defense. Under Illinois law, as it pertains to collateral estoppel, however, it is

---

[5] DAVID'S affidavit, and that of his attorney in the state court proceeding, conclusory and self-serving, are no substitute for a proper bystander's report.

not the opportunity but what the defendant does with it that matters. It is also noteworthy that THERESA was not represented by counsel in the state court action. Based on the facts in the record, the Court determines that THERESA'S level of participation in the state court suit was insufficient to trigger the application of the doctrine of collateral estoppel.

In addition, there is an alternative basis to deny DAVID'S motion. The elements of a cause of action for conversion under Illinois law are: (1) unauthorized and wrongful assumption of control, dominion, or ownership by one person over the personal property of another; (2) the other person's right to the property; (3) the right to immediate possession of the property; and (4) a demand for possession. *Naiditch v. Shaf Home Builders, Inc.*, 160 Ill.App.3d 245, 512 N.E.2d 1027 (Ill.App. 2 Dist. 1987). The tort of conversion may support an award of punitive damages. *Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc.*, 372 Ill.App.3d 461, 865 N.E.2d 558 (Ill.App. 1 Dist. 2007). An award of punitive damages is appropriate where "the defendant acts willfully or with such gross negligence to indicate a wanton disregard of the rights of others." *Turner v. Firstar Bank, N.A.*, 363 Ill.App.3d 1150, 1160, 845 N.E.2d 816 (Ill.App. 5 Dist. 2006)(action for conversion); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 384 N.E.2d 353 (1978)(punitive damages allowable "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others").

In the present case, the judgment order states that THERESA'S conversion was willful, wanton and unauthorized, although no punitive damages were awarded. A willful

and wanton determination is not a necessary element of conversion. And it is far from clear that willful and wanton under Illinois law mean the same thing as willful and malicious in Section 523(a)(6). Regardless, because no punitive damages were awarded, the characterization in the judgment of THERESA'S conduct as willful and wanton was not necessary to the judgment and is surplusage.[6] A judgment for conversion, which establishes only the wrongful exercise of dominion over property, does not, without more, decide the issues under Section 523(a)(6). *In re Peklar*, 260 F.3d 1035 (9th Cir. 2001) (applying California law).

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[6] There is no basis in the amended complaint, the supporting affidavit or elsewhere in the underlying state court record for any determination that THERESA'S conduct, even accepting the facts of conversion, was willful, wanton, fraudulent or done with actual malice. The Court presumes that DAVID'S state court attorney wrote out the order and that the judge made no such express findings as to THERESA'S conduct.